# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-187


HALEY PRUDHOMME JOUBERT

VERSUS

JOBY CHASE JOUBERT


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 76114-A
HONORABLE GARY J. ORTEGO, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Shannon J. Gremillion, and Van H. Kyzar, Judges.


**AFFIRMED.**

**K. Ray Rush**
**Attorney at Law**
**102 South 10th Street**
**Oakdale, LA 71463**
**(318) 335-2759**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Haley Prudhomme Joubert**

**Gilbert J. Aucoin II**
**Attorney at Law**
**153 South Court Street**
**Ville Platte, LA 70586**
**(337) 363-2223**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Haley Prudhomme Joubert**

**Jacob B. Fusilier**
**Fusilier & Associates**
**P. O. Box 528**
**Ville Platte, LA 70586**
**(337) 363-6661**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Haley Prudhomme Joubert**

**Chris Villemarette**
**Attorney at Law**
**3404 Moss Street**
**Lafayette, LA 70507**
**(337) 232-3100**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Joby Chase Joubert**

**GREMILLION, Judge.**

The plaintiff, Haley Prudhomme Joubert (Haley), appeals the trial court's judgment in favor of the defendant, Joby Chase Joubert (Chase)[1], finding that La.R.S. 9:361 et seq. (Post-Separation Family Violence Relief Act) was inapplicable to her claims for full custody of their son. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Haley and Chase married in December 2014, and one child was born of the marriage, C.J.[2] In March 2016, Haley filed for divorce and requested injunctive relief alleging that Chase had a history of physically and verbally abusing her. A temporary restraining order was issued on March 30, 2016. The parties entered into a consent judgment in November 2016, in which both parties were given joint custody of C.J. with Haley being designated domiciliary parent. Chase was awarded weekend visitation.

In January 2017, Haley filed a rule for emergency modification of custody and visitation and a rule for contempt. In that rule she alleged that upon picking C.J. up from Chase, he had bruising and swelling on his lower back and buttocks and that emergency room personnel told her that sexual abuse may be the cause of the bruising and swelling. Chase filed a motion and order for contempt alleging that Haley was not allowing him to have his scheduled visitation with C.J.

In April 2017, Haley filed a petition for judgment of divorce in accordance with La.Code Civ.P. art. 3952, the passage of 365 days of living separate and apart. The trial court rendered an interim judgment on May 10, 2017, maintaining the consent judgment entered into by the parties except that Chase "shall have no

---

[1] Joby Chase Joubert is referred to throughout the record by his middle name, Chase, and we will use it here.

[2] Pursuant to Uniform Rules, Courts of Appeal, Rule 5–2, we use initials throughout to protect the identity of the minor.

visitation with the minor child pending further order of this Court." That same day a judgment of divorce was granted.

On March 26, 2018, the parties entered into a stipulated judgment reinstating the consent judgment of November 2016 except for changes in the payment of child support and the location of the exchange of C.J.

In September 2018, Haley filed a petition for protection under La.R.S. 9:361 and a rule for modification of custody, alleging that C.J. suffered serious emotional and physical abuse at the hands of Chase. Attached to that petition were medical documents reflecting a quarter-sized burn on C.J.'s ankle from a minibike motorcycle. The trial court denied the temporary restraining order Haley requested. Haley filed supervisory writs with this court. She also requested an expedited consideration on the stay of visitation, which the trial court denied. Chase answered Haley's petition and filed a rule for modification of custody and for contempt. In it, he denied all allegations of abuse, stating that Haley was fabricating claims against him.

On October 25, 2018, we granted Haley's writ and ordered the issuance of a temporary restraining order. Following a two-day hearing on October 31, 2018 and November 30, 2018, the trial court found that "the injury to the minor child was accidental and not as the result of abuse or neglect. The court finds no changes in the circumstances warranting a modification of custody." Haley's motion was denied, and the consent judgment of November 2016 was reinstated. In November 2018, Chase filed a motion for contempt against Haley.

Haley now appeals and assigns as error:

The trial court erred as a matter of law by applying the "material change of circumstances" standard and by failing to find appellee, Joby Chase Joubert, had a history of perpetuating family violence, such that the application of La.R.S. 9:361-9:369 is mandated.

2

*Testimony*

A representative from the Louisiana State Police and the Department of Children and Family Services both testified that they had no open cases against any of the parties involved.

Richard McMurray, a sergeant with the Ville Platte Police Department, was a deputy at the time Haley filed a complaint regarding the burn mark on C.J.'s ankle. He testified that he received the complaint that C.J. was burned by a motorcycle and that there was no further contact with the parties. He testified that he was not called out for any reason other than the burn.

Kalinsky Ardoin, a deputy with the Evangeline Parish Sheriff's Office, testified that he was dispatched to the emergency room in December 2016 and received a complaint from Haley and her mother that C.J. was being molested. No evidence of molestation was presented other than some cell phone pictures in which the child could not be identified. He stated that he did not see any abuse or neglect.

Dr. Meena A. Bakare, a pediatrician, first saw C.J. on January 12, 2017. He was brought in by his maternal grandmother, who claimed he was being molested. Dr. Bakare only reported histories given by Haley or Haley's mother. She testified that children are burned all the time and that it is not necessarily as a result of abuse. She further testified that she did not treat C.J. for any type of abuse and saw no signs of abuse.

Matthew Willis, an officer with the Ville Platte Police Department, testified that he supervised all of the custody exchanges between the parents and that C.J. would scream and cry that he did not want to go with his father.

Chris Fontenot testified that he was with Chase on the weekend of September 15, 2018 at the Sabine ATV park. He said they rode motorcycles and "side by sides" in the sand, dirt, and mud. He testified that numerous friends with campers were

3

there for the weekend. Fontenot said that Chase's son was with him and that he was running around the park and appeared happy. He further testified that C.J. liked to ride his son's minibike. Fontenot said that C.J. was too small to ride it, but he would sit on it. Fontenot said that C.J. sat on the bike several times over the weekend including after his son had ridden it. He pointed out the clutch, similar in size to C.J.'s injury, and testified that it would have been hot after the minibike had been ridden. A picture of C.J. sitting on the bike was submitted into evidence.

*November 30, 2018 hearing*

Dr. John Alberty, a pediatric gastrologist, testified that he treated C.J. for diarrhea. However, regarding the ankle burn, he testified:

> So the . . . story that I . . . well so what I saw looked like a third degree burn on the ankle which is an unusual place for a burn on a toddler but . . . and then momma saying that she . . . he was burned at dad's, she said that it . . . she . . . her story was that it was from a muffler which didn't really add up for a burn on the ankle and so when have a . . . when you have an injury with a story that doesn't make sense we're required to . . . so if you suspect child abuse, you don't have to prove it, but if you suspect it you have to report it.

The notes of Amanda Barfield, a psychiatric nurse practitioner, were submitted into evidence; however, they are barely legible and what can be discerned has no bearing on these proceedings.

Chase testified that he has little knowledge about C.J.'s day-to-day life because he has no contact with Haley. He further testified that he was not allowed to see C.J. according to the visitation plan because Haley would not allow him to. Chase stated that when he calls to speak to C.J., the phone goes straight to voice mail. He further testified he has no idea where C.J. goes to daycare, did not know that C.J. was seeing a psychiatrist, and did not know of any medical issues he was having except for the ankle burn. Chase testified that the last time he saw C.J. was the weekend when his ankle was burned. Regarding the burn, Chase said he did not witness C.J. being

4

burned and only noticed it on Saturday afternoon when he was putting C.J.'s shoe on. Chase testified that he treated the burn with some burn cream from a first aid kit and bandaged it.

Haley was questioned about "circumstances that may have changed . . . since September this year," and she stated there had been no changes, that she lived in the same place, she and Chase did not speak, and C.J. had been with her every day. On cross-examination she was questioned, "[C.J.] told you that he burned himself on a [minniebike]?" to which she replied "No." She further denied hearing C.J. tell the investigating officer that he burned himself on the minibike, as the investigating officer testified to. She stated that she told the officer "exactly what Chase told me. He told me it could have been a four-wheeler. It could have been a dirt bike. He wasn't sure because he did not see." She then went on to state:

> What [C.J.] told me was first that it was a four-wheeler. Then he said it was mosquito bites. Then he said that he didn't know what happened, which is the same thing he told CPS. Um, what we did, me and my mother, we printed out pictures of different things that it could have possibly been. What my child pointed to was a cigarette lighter that was glowing red with a cigarette picture and said that is what burned me.

She stated that she stopped communicating with Chase over two years ago and did not inform him about pertinent medical issues relating to C.J. She admitted that she did not appear with C.J. for Chase's scheduled visitation on November 17-19 and that Chase had not seen his son since the September weekend when C.J. burned his ankle.

## DISCUSSION

It is well established that in every instance relating to the custody of a child, the trial court's factual findings will not be disturbed in the absence of manifest error. *Guidry v. Guidry*, 07-1272 (La.App. 3 Cir. 3/5/08), 979 So.2d 603. The trial court is in a superior position to assess witness credibility and the best interests of the child

5

after considering all of the testimony and evidence. *Id.* Accordingly, we will not

disturb a custody award unless an abuse of discretion is clearly shown. *Id.*

Haley argues that La.R.S. 9:364 should have been applied in determining

custody of C.J. Louisiana Revised Statutes 9:364 states (emphasis added):

A. There is created a presumption that no parent who has a history of perpetrating family violence, as defined in R.S. 9:362, or domestic abuse, as defined in R.S. 46:2132, or has subjected any of his or her children, stepchildren, or any household member, as defined in R.S. 46:2132, to sexual abuse, as defined in R.S. 14:403, or has willingly permitted another to abuse any of his children or stepchildren, despite having the ability to prevent the abuse, shall be awarded sole or joint custody of children. *The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence.*

B. The presumption shall be overcome only if the court finds all of the following by a preponderance of the evidence:

(1) The perpetrating parent has successfully completed a court-monitored domestic abuse intervention program as defined in R.S. 9:362, or a treatment program designed for sexual abusers, after the last instance of abuse.

(2) The perpetrating parent is not abusing alcohol or using illegal substances scheduled in R.S. 40:964.

(3) The best interest of the child or children, considering the factors listed in Civil Code Article 134, requires the perpetrating parent's participation as a custodial parent because of the other parent's absence, mental illness, substance abuse, or other circumstance negatively affecting the child or children.

C. The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.

D. If the court finds that both parents have a history of perpetrating family violence, custody shall be awarded solely to the parent who is less likely to continue to perpetrate family violence. In such a case, the court shall mandate completion of a court-monitored domestic abuse intervention program by the custodial parent. If necessary to protect the welfare of the child, custody may be awarded to a suitable third person pursuant to Civil Code Article 133, provided that the person would not allow access to a violent parent except as ordered by the court.

6

E. If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent pursuant to R.S. 9:341.

F. If any court finds, by clear and convincing evidence, that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children pursuant to R.S. 9:341.

Louisiana Revised Statutes 9:362 defines family violence:

"Family violence" includes but is not limited to physical or sexual abuse and any offense against the person as defined in the Criminal Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children. Family violence does not include reasonable acts of self-defense utilized by one parent to protect himself or herself or a child in the family from the family violence of the other parent.

It was Haley's burden to prove that Chase committed acts of violence against C.J. such that these articles would apply.

The trial court thoroughly reviewed all of the evidence, including the evidence prior to the consent judgment entered into by the parties on March 26, 2018, and in its oral reasons for ruling, stated:

The Court finds that Mr. Fontenot, . . . as an independent witness, uh, to be very informative. And, not only informative and more believable but it was consistent with the other evidence presented at trial as to the exact . . . origin and nature of the burn and injury on the right ankle of the minor child.

The trial court further found Dr. Bakari's testimony that she never saw any signs of abuse or neglect of C.J. credible and supported by the testimony. The trial court went on to state that it "finds as a finding of fact as to this evidence and to this case that the child's burn to the right ankle was in fact caused by an accidental burn on the [minibike] as shown by the evidence and testimony, and, and not by abuse."

The trial court found that Haley failed to carry her burden of proving abuse of the child by Chase and that neither party proved any changes of circumstances such that the existing custody arrangement should be modified.

7

The trial court did not find any history of family violence such that La.R.S. 9:365 should apply. We agree and find no error in that finding. There is simply no manifest error in the trial court's finding that the burn on C.J.'s ankle was the result of an accident, as that finding is well-supported by the evidence. Moreover, although the trial court did not even need to consider the allegations made before the March 26, 2018 stipulated judgment, it did. The record reveals a long history of unsubstantiated allegations of abuse made by Haley and her parents in an attempt to gain full custody of C.J. Numerous doctors testified to histories given to them by Haley and/or her parents, but none found that C.J. was being abused. Furthermore, Haley's stipulation in March 2018 to having the original 2016 judgment reinstated waived any claims of family violence prior to that time. The trial court, nevertheless, entertained all of the testimony about the alleged incidents occurring before then and did not find them to be credible. We find no error in that finding.

The trial court correctly applied the material-change-of-circumstances standard since the parties had a consent decree, and it did not err in maintaining the existing custody arrangement. Accordingly, the trial court's ruling maintaining the March 26, 2018 stipulated judgment of the trial court reinstating the November 28, 2016 custody plan is affirmed. All costs of this appeal are assessed to Haley Prudhomme Joubert.

**AFFIRMED**.